IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

FREDA J. DUFF-BROWN, et al.,

               Plaintiffs,

     v.

CITY AND COUNTY OF SAN
FRANCISCO,

           Defendant.

NO. C11-3917 TEH

ORDER RE CROSS-MOTIONS
FOR SUMMARY JUDGMENT

This case, concerning the hospitals exemption under the Fair Labor Standards Act ("FLSA"), came before the Court on November 26, 2012 on Plaintiffs' motion for partial summary judgment and Defendant's motion for summary judgment. Having carefully considered the parties' oral and written arguments, the Court now DENIES Plaintiffs' motion and GRANTS IN PART and DENIES IN PART Defendant's motion.

**BACKGROUND**

Plaintiffs, present and former employees at the San Francisco Behavioral Health Center ("BHC"), bring this action for unpaid overtime compensation under the FLSA. The FLSA requires that employees be paid one and a half times their base hourly rate for every hour they work above 40 in a given seven-day period. 29 U.S.C. § 207(a)(1). An exemption from this requirement permits certain hospitals to reach an agreement with their employees to substitute a 14-day base period for purposes of overtime compensation, in lieu of the seven-day period, and to pay overtime only for hours worked above 80 in a 14-day period. *Id*. § 207(j). The central question in this case is whether such an agreement was reached in 2004 between the Unions representing Plaintiffs and the San Francisco Department of Public Health ("City" or "DPH").

1    In May and June of 2004, when the City was in the process of reconfiguring its

2  Mental Health Rehabilitation Facility ("MHRF") into the BHC, it held a series of "meet and

3  confer" meetings with the Unions representing the workers.[1]  *See* Exh. A to Thomas Decl.

4  (Dkt. No. 36-4) ("meet and confer notes" or "notes") at CCSF 000482-000499.  The

5  undisputed evidence from these meetings shows the following:

6    At the June 2 meeting, DPH proposed a staffing schedule providing for five-day,

7  forty-hour work weeks for the employees.  Notes (Dkt. No. 36-4) at CCSF 000486; Thomas

8  Decl. ¶ 7.  Prior to the reconfiguration, the employees had had alternating weekends off; they

9  objected to the proposed schedules because the forty-hour work weeks eliminated their

10  alternating weekends off.  Notes at CCSF 000486; Exh. B to Houston Decl. at CCSF 000477;

11  Sims Decl. ¶¶ 7-8; Thomas Decl. ¶ 7.  Following this objection, City negotiator Bob Thomas

12  explained that the City proposed that schedule in order to comply with the FLSA.  Notes at

13  CCSF 000486; Thomas Decl. ¶ 8.  There is a dispute in the record as to whether the Union

14  made a scheduling counter-proposal on June 2 or whether that counter-proposal did not

15  happen until June 10.  *Compare* Thomas Decl. ¶ 8 (Union proposed its schedule on June 2),

16  *with* notes at 000486 (no mention of Union counterproposal on June 2), *id.* at 000493 (Union

17  representative Bevan distributed his schedule on June 9).

18    At the next meeting on June 7, Union representative Kim Tavaglione stated that "she

19  checked with her attorney, Ann Yen, who said that employees at the MHRF can waive their

20  overtime and they can have every other weekend off."  Notes at CCSF 000488; *see also*

21  Thomas Decl. ¶ 8; Wicher Decl. ¶ 9; Sims Decl. ¶ 9; Houston Decl. ¶ 9; P's Reply at 1.

22  Thomas then stated "Kim's attorney should speak with our attorney, Martin Gran," and Kim

23  stated "Employee[s] should sign waiver during the bidding process."  June 7 notes at CCSF

24  000488.

25

26

_____

27    [1]The employees were represented by several different Unions at that time, which opted to
meet and confer as a group. Exh. B to Thomas Decl. at CCSF 000476.  There is no dispute in this
28  case about whether the representatives at the negotiations were authorized to speak for all of the
employees.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    At the next meeting on June 9, Union representative Larry Bevan "prepared a

2    schedule that [the Union] believes provides coverage where management needs it. [He]

3    [d]istributed [it] to everyone."  Notes at CCSF 000493; Exh. B to Houston Decl. at CCSF

4    000478.  The schedule was "a hybrid schedule, similar to ones used in the past at the

5    MHRF."  Notes at CCSF 000493.  Larry stated that "This schedule . . . meets the coverage

6    needs, but not necessarily the FLSA needs."  Notes at CCSF 000493; Exh. B to Houston

7    Decl. at CCSF 000478.  Bob Thomas then stated: "FLSA has a separate license and if we go

8    to the 80-hour week [sic], we won't have the FLSA problem that we would have with a 40-

9    hour week."  Notes at CCSF 000493.  Thomas, the City negotiator, concluded the discussion

10   of schedules by saying "We will look at Larry's proposed schedule for coverage.  With his

11   schedule, we don't have to worry about FLSA any longer."  *Id.*

12    On June 14, DPH and the Unions accepted a revised version of the schedules.  Ex. B.

13   to Houston Decl. at CCSF 000479; Ex. B. to Thomas Decl. at CCSF 000503.  Under these

14   schedules, the employees worked a recurring cycle of 32 hours one week and 48 hours the

15   next ("32/48 schedules").  Duff-Brown Decl. ¶ 2; Lim Decl. ¶ 2.  On July, 22, 2004, after the

16   negotiations had concluded, the City sent a memorandum to the Union representatives

17   summarizing the issues discussed during the meet and confer process.  Exh. B. to Houston

18   Decl. at CCSF 000476.

19    The employees were never given waivers to sign.  They went to work according to the

20   32/48 schedules and were never paid overtime for the eight hours above 40 during the 48-

21   hour weeks.  Lim Decl. ¶ 2; Duff-Brown Decl. ¶ 2.  In 2009, Plaintiffs discovered that

22   employees with the same job classification at other San Francisco facilities were being paid

23   overtime.  Duff-Brown Decl. ¶ 4; Lim Decl. ¶¶ 5-6.  Plaintiff-employee Dennis Lim filed a

24   complaint with the Department of Labor ("DOL").[2]  Lim Decl. ¶ 12.  The DOL's Wage and

25   Hour division investigated and determined, with little reasoning, that "Under 7(j) [sic] of the

26   _____

27        [2]Defendant requests that the Court take Judicial Notice of certain DOL documents.  D's MSJ
     at 6 n.22.  Finding that the DOL documents are "not subject to reasonable dispute" under Federal
28   Rule of Evidence 201(b), the Court GRANTS the request.  *See Farris v. County of Riverside*, 667 F.
     Supp. 2d 1151, 1155 (C.D. Cal. 2009) (taking judicial notice of DOL Letter Ruling).

United States District Court

For the Northern District of California

1    Act, the employer and the employee were in an agreement/understanding of the work

2    schedule before the employees performed the work. . . .  A work period of fourteen

3    consecutive days for purposes [sic] is accepted in lieu of the workweek of seven consecutive

4    days for purposes of overtime computation."³  Exh. B to Bond Decl. (Dkt. No. 36) at 13.⁴

5         Plaintiffs filed this action for unpaid overtime compensation and seek summary

6    judgment on Defendant's liability for unpaid overtime compensation and on Plaintiffs'

7    eligibility for liquidated damages.  Defendant cross-moves for summary judgment on

8    liability, claiming that it was operating under the § 207(j) exemption based on an agreement

9    made in 2004 between the City and the Unions to use a base period of 14-days for purposes

10   of overtime computation.  Defendant also seeks summary judgment on the applicable statute

11   of limitations period.

12

13   **LEGAL STANDARD**

14        Summary judgment is appropriate when "there is no genuine dispute as to any

15   material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

16   56(a).  Material facts are those that may affect the outcome of the case.  *Anderson v. Liberty*

17   *Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there is

18   sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*  The

19   court may not weigh the evidence and must view the evidence in the light most favorable to

20   the nonmoving party.  *Id.* at 255.

21        A party seeking summary judgment bears the initial burden of informing the court of

22   the basis for its motion, and of identifying those portions of the pleadings or materials in the

23   _____

24        ³Defendant argues that "the DOL's interpretation of the statute is entitled to
     deference."  D's Opp'n at 10 (citing cases).  Defendant does not argue that the DOL's
25   Wage and Hour report constitutes the DOL's "interpretation of the statute," and the Court
     finds that the report, as a factual investigation, is not entitled to agency deference under
26   Defendant's cases.  *See, e.g., Auer v. Robbins*, 519 U.S. 452 (1997).

27

28        ⁴ Both the declaration of Ruth Bond and the supporting exhibits are lodged as Docket No. 36.
     The exhibits are not internally paginated.  The Court therefore uses the pdf page numbers for
     citation purposes.

record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it "must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). However, on an issue for which its opponent will have the burden of proof at trial, the moving party can prevail merely by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial to defeat the motion. *Anderson*, 477 U.S. at 250.

When parties submit cross-motions for summary judgment, each motion must be considered on its own merits. *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). "'The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.' In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." *Id.* (citation omitted).

**DISCUSSION**

A. Applicable Law

The exemption set forth in section 207(j) provides that certain hospital facilities "shall not be deemed to have violated subsection (a) of this section [requiring overtime pay for hours above 40 in a seven-day period] if, pursuant to an agreement or understanding arrived at between the employer and the employee before performance of the work, a work period of fourteen consecutive days is accepted in lieu of the workweek of seven consecutive days for purposes of overtime computation . . . ." 29 U.S.C. § 207(j).

The regulations implementing § 207(j) provide that:

> The agreement or understanding between the employer and employee to use the 14–day period for computing overtime . . . may be arrived at directly with the employee or through his representative. It need not be in writing, but if it is not, a

5

United States District Court

For the Northern District of California

special record concerning it must be kept as required by part 516 of this chapter.

29 CFR § 778.601(c).  The agreement must be entered into before the work begins and with the intent to use such a period permanently or for a substantial period of time.  *Id.*

Part 516.23 requires hospitals using the § 207(j) exemption to keep "A copy of the agreement or understanding with respect to using the 14–day period for overtime pay computations or, if such agreement or understanding is not in writing, a memorandum summarizing its terms and showing the date it was entered into and how long it remains in effect."  29 C.F.R. § 516.23(b).

Exemptions under the FLSA "are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit."  *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960); *see also Auer v. Robbins*, 519 U.S. 452, 462 (1997) (exemptions "are to be withheld except as to persons 'plainly and unmistakably within their terms and spirit.'" (citation omitted)); *Service Employees Intern. Union, Local 102 v. County of San Diego*, 60 F.3d 1346, 1350 (9th Cir. 1994).

The parties dispute whether Defendant must prove that it qualifies for the exemption by a preponderance of the evidence or by clear and convincing evidence.  *See* Ps' Motion ("MSJ") at 5; D's Opp'n at 7.  Plaintiffs cite *Donovan v. United Video, Inc.*, 725 F.2d 577, 581 (10th Cir. 1984), for the proposition that a defendant must prove the application of a FLSA exemption by clear and convincing evidence.  Ps' MSJ at 5.  However, the Tenth Circuit recently revisited *Donovan* and clarified that "a court must find that the claimed exemption falls 'plainly and unmistakably' within the terms of the statute[,]" but that "the ordinary burden of proof—preponderance of the evidence—controls the jury's evaluation of whether the facts establish an exemption to the FLSA."  *Lederman v. Frontier Fire Prot., Inc.*, 685 F.3d 1151, 1157-58 (10th Cir. 2012); *accord, Yi v. Sterling Collision Centers, Inc.*, 480 F.3d 505, 506-08 (7th Cir. 2007) ("nothing in the [FLSA], the regulations under it, or the law of evidence justifies imposing a requirement of proving entitlement to the exemption by 'clear and affirmative evidence.'").  The Court agrees that the burden of proof at trial in this

case is the preponderance standard applicable in federal civil cases generally.  *See Yi*, 480 F.3d at 507.

## B. Liability

At the heart of this dispute is the question of whether the City reached an agreement with the Union in 2004 to adopt a 14-day period for purposes of overtime computation, thereby waiving the employees' right to receive overtime pay during the 48-hour work weeks.  Black's dictionary defines "agreement" as "1. A mutual understanding between two or more persons about their relative rights and duties regarding past or future performances; a manifestation of mutual assent by two or more persons."  Black's Law Dictionary (8th ed.).  Both parties took the position at the hearing that contract law principles apply to this determination.

California contract law reflects the same central element as the dictionary definition:  "An essential element of any contract is the consent of the parties, or mutual assent."  *Donovan v. RRL Corp.,* 26 Cal. 4th 261, 270 (2001) (citing Cal. Civ. Code §§ 1550 & 1565).  In other words,

> There is no contract until there is mutual consent of the parties. . . . Mutual consent necessary to the formation of a contract is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings.

*Deleon v. Verizon Wireless*, LLC, 207 Cal. App. 4th 800, 813 (2012) (internal quotation marks and citations omitted).

This central question, whether there was a meeting of the minds, is a mixed question of law and fact.  *See id.* ("Although mutual consent is a question of fact, whether a certain or undisputed state of facts establishes a contract is a question of law for the court.").  Although the evidence in this case is largely agreed upon, the parties dispute whether the facts support an inference that a meeting of the minds – and therefore an agreement – was reached.

**1.      Plaintiffs' Motion**

Plaintiffs ask the Court to find that Defendant has not proven that an agreement was reached, either in writing or orally, and that even if an agreement was reached orally, it did not comply with the regulations requiring that a record be kept summarizing the contents of the agreement.  The Court finds that there was no written agreement; that a genuine dispute of fact precludes entry of judgment as to whether an agreement was reached orally, and that any record-keeping violation does not preclude Defendant from fitting within the exemption if, in fact, there was an agreement to adopt the fourteen-day base period.

Agreement in writing

First, Plaintiffs argue there was no agreement in writing under 29 C.F.R. §§ 516.23 and 778.601(c).  Defendant offers the July 22, 2004 memorandum it circulated summarizing the Meet and Confer discussions as such an agreement.  D's Opp'n at 8; *see* Ex. B to Houston Decl. at CCSF 00476 (July 22, 2004 memorandum).  However, Defendant shows no more than that it wrote this memorandum and mailed it to the Union representatives; it has produced no evidence of the Union's assent to the terms of the memorandum.  The July 22 memorandum, to be sure, may serve as evidence of what the parties agreed to orally during the negotiations, but it can not itself serve as a contract or agreement in writing.

Oral agreement

Second, Plaintiffs argue that the evidence of the 2004 meet and confer negotiations is insufficient to show that the Union representatives agreed to waive their members' right to overtime for hours worked above 40 during alternating work weeks.  The Court views the evidence in a light most favorable to Defendant as the non-moving party and concludes that the evidence from the meet and confer meeting is sufficient to permit a reasonable jury to infer that an agreement was reached.

At the June 2 meeting, City negotiator Bob Thomas stated that the City proposed the 40-hour work-week schedules in order to comply with the FLSA.  Notes at CCSF 000486. The Union objected to losing weekends off.  Thomas "made it clear that the City would not agree to schedules that would require it to pay eight hours of overtime for each week

United States District Court

For the Northern District of California

1   employees worked 48 hours because of the substantial cost to DPH."  Thomas Decl. ¶ 8.

2   After Union representative Larry Bevan distributed his proposed schedule on June 9, Thomas

3   talked about the FLSA issue and stated "With [Larry's] schedule, we don't have to worry

4   about FLSA any longer."  Notes at CCSF 000493.

5          The Court finds that from the totality of the circumstances, from the Union's desire to

6   get weekends off, from Thomas's statements on both June 2 and June 9, and the Union's

7   counterproposal of 32/48 schedules, a jury could reasonably infer that the Union agreed to

8   adopt the 14-day period for purposes of overtime computation, either on June 2 --

9   particularly if the Union counter-proposed a 32/48 hour schedule at that time -- or on June 9

10  when it counter-proposed a 32/48 schedule.[5]

11         Finding a genuine dispute of material fact as to whether the Union and the City

12  reached an agreement during the meet and confer meetings, the Court DENIES Plaintiffs'

13  motion for summary judgment as to Defendant's liability.

14         <u>Record satisfying 29 CFR 778.601, 516.23</u>

15         Finally, Plaintiffs argue that even if an agreement was reached orally during the

16  negotiations, Defendant cannot meet the terms of the § 207(j) exemption because it did not

17  maintain a record as required under 29 C.F.R. § 516.23.  Ps' MSJ at 17.  Because there is no

18  private right of action to enforce the FLSA's record-keeping provisions, and no right to

19  _____

20         [5] Plaintiffs raise the additional argument that California law precludes the operation of any
    oral agreement on these facts because California requires agreements setting conditions for public
21  sector employees to be approved by the Board of Supervisors in order to become binding.  Ps' MSJ
    at 17-18; Ps' Opp'n at 15 (citing Cal. Gov't Code § 3505.1; *Glendale City Employees Assn. v. City
22  of Glendale*, 15 Cal. 3d. 328 (1975)).  The argument is not persuasive.  The Meyers Millias Brown
    Act ("MMBA") requires the governing body of a public agency to meet and confer in good faith
23  with Unions regarding terms and conditions of employment.  Cal. Gov't Code § 3505.  It also
    provides that if an "agreement is reached by the representatives of the public agency and a
24  recognized employee organization," the agreement does not become binding until embodied in a
    memorandum of understanding and presented to the "governing body."  *Id.* § 3505.1.  However,
25  none of Plaintiffs' cases stand for the proposition that *any* agreement between management and
    public employees must be ratified by the Board of Supervisors to become operative.  *See, e.g.,
26  Glendale City*, 15 Cal. 3d. 328, 332 (memorandum of understanding setting employees' salaries,
    once ratified, was binding).  Nor is the Court willing to rule that the City's failure to produce a
27  recording of the agreement for Plaintiffs' inspection precludes application of the § 207(j) exemption,
    *see* Ps' MSJ at 18; such a step would raise significant concerns of state and federal law.  *Cf. SEIU v.
28  San Diego*, 60 F.3d at 1353 (invalidating DOL's interpretation under white collar exemption where
    that interpretation "clearly conflicted with congressional intent that public sector employers be able
    to claim [the exemption]").

                                          9

United States District Court

For the Northern District of California

1   monetary damages even if there were, the Court finds that even if the July 22, 2004

2   memorandum fails to comply with the regulations, such failure on its own does not entitle

3   Plaintiffs to a judgment as to liability.

4        The FLSA's record-keeping provisions are enforced through FLSA § 217.[6]

5   "Authority to enforce the Act's recordkeeping provisions is vested exclusively in the

6   Secretary of Labor." *Elwell v. Univ. Hospitals Home Care Services*, 276 F.3d 832, 843 (6th

7   Cir. 2002); *see also East v. Bullock's Inc.,* 34 F. Supp. 2d 1176, 1183 (D. Ariz. 1998) (no

8   private right of action to enforce record-keeping provisions; collecting cases); *Lopez v. Tri-*

9   *State Drywall, Inc.,* 861 F. Supp. 2d 533, 537 (E.D. Pa. 2012) (same).  In light of the fact that

10  Plaintiffs could not seek to enforce the record-keeping provisions in the absence of a

11  substantive violation of the FLSA, the Court finds that Plaintiffs are not entitled to summary

12  judgment on the ground that the record kept by Defendant was insufficient.

13       **2.   Defendant's Motion**

14       In ruling on Defendant's motion, the Court views the evidence in a light most

15  favorable to Plaintiffs and finds that a reasonable jury could conclude either that no

16  agreement was reached or that the City failed to carry its burden to prove one.

17       Kim Tavaglione stated at the June 7 meeting that she had checked with her attorney

18  who said that "employees at the MHRF can waive their overtime and they can have every

19  other weekend off."  CCSF 000488.  To this Bob Thomas replied "Kim's attorney should

20  speak with our attorney," and Tavaglione concluded that the employees "should sign [a]

21  waiver during the bidding process."  *Id.*  From this, a jury could infer that Tavaglione meant

22  that *in order for the employees to actually waive their overtime*, they should sign waivers

23  during the bidding process.  This interpretation would defeat the element of assent necessary

24  for Defendant to show that she actually agreed to waive the overtime on the employees'

25  behalf at that moment.  Regarding the July 9 exchange, Larry Bevan's statement when he

26  _____

27       [6] Section 217 vests in the district court "jurisdiction . . . to restrain violations of section 215 of this title . . . ."  29 U.S.C. § 217.  Section 215(a)(5) incorporates § 211(c), containing the record-keeping provision.  *See Elwell v. Univ. Hospitals Home Care Services*, 276 F.3d 832, 843 (6th Cir.

28  2002).

10

United States District Court

For the Northern District of California

1  proposed the schedule that it did not necessarily meet the FLSA needs, Notes at CCSF

2  000493, is sufficient to raise a dispute as to whether or not he was agreeing to waive

3  overtime at that moment.  A jury could infer from Bevan's statement that he did not think he

4  was waiving the employees' overtime.  If he did not intend to waive the overtime, there was

5  no assent from the Union and therefore no agreement.

6        Finding a genuine dispute as to whether there was mutual assent by both sides to

7  adopt a 14-day base period, thereby waiving the employees' right to receive overtime pay

8  during the 48-hour weeks, the Court DENIES Defendant's motion as to liability.

9

10 C. Damages

11       The parties also present several claims regarding damages.  Defendant seeks summary

12 judgment as to the applicable statute of limitations, and Plaintiffs seek summary judgment as

13 to an award of liquidated damages under 29 U.S.C. § 216(b).  The Court GRANTS the

14 former request as unopposed and declines to rule on liquidated damages at this time, in light

15 of its denial of summary judgment on liability.

16       **1.    Defendant's Motion with Regard to Statute of Limitations**

17       A two-year statute of limitations period applies to civil actions to enforce FLSA's

18 provisions unless a Defendant's violation of the FLSA was willful.  29 U.S.C. § 255(a);

19 *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128 (1988).  However, Plaintiffs do not seek to

20 apply the extended limitations period for willful violations.  *See* Ps' MSJ at 1, 19 (seeking

21 "an accounting for the period commencing two (2) years prior to the date of filing of the

22 Complaint this action").  The Court therefore GRANTS as unopposed Defendant's motion to

23 apply the two-year statute of limitations.

24       **2.    Plaintiffs' Request for Liquidated Damages**

25       Plaintiffs seek an award of liquidated damages under 29 U.S.C. § 216(b) ("Any

26 employer who violates the provisions of section 206 or section 207 of this title shall be liable

27 to the employee or employees affected in the amount of their unpaid minimum wages, or

28 their unpaid overtime compensation, as the case may be, and in an additional equal amount

11

1  as liquidated damages.").  Because the Court has denied summary judgment as to liability, it

2  need not rule on damages at this time.

3          The Court notes, however, that the decision whether to award liquidated damages is a

4  matter within the Court's discretion if "the employer shows to the satisfaction of the court

5  that the act or omission giving rise to [the FLSA action] was in good faith and that [the

6  employer] had reasonable grounds for believing that his act or omission was not a violation

7  of the Fair Labor Standards Act of 1938."  29 U.S.C. § 260.   The Court is inclined, based on

8  the record at this time, to think that Defendant acted in good faith and had reasonable

9  grounds for believing the Union had agreed to adopt the 14-day period for purposes of

10  overtime compensation, even if a jury ultimately finds that there was no agreement.

11  Plaintiffs could, of course, produce evidence at trial to suggest otherwise.

12

13  **CONCLUSION**

14          Because the Court finds there is a disputed issue of fact as to the central question

15  whether an agreement was reached during the 2004 negotiations, the Court DENIES both

16  motions as to Defendant's liability under the FLSA.  Regarding damages, the Court

17  GRANTS Defendant's motion as to the limitations period and declines to enter any ruling at

18  this time on the issue of liquidated damages, interest, or fees.

19

20  **IT IS SO ORDERED.**

21

22  Dated: 1/15/13                                  _____

23                                                  THELTON E. HENDERSON, JUDGE
                                                    UNITED STATES DISTRICT COURT

24

25

26

27

28

**United States District Court**
For the Northern District of California