DENNIS J. HERRERA, State Bar #139669
City Attorney
ELIZABETH SALVESON, State Bar #83788
Chief Labor Attorney
RUTH M. BOND, State Bar #214582
Deputy City Attorney
1390 Market Street, Fifth Floor
San Francisco, California 94102-5408
Telephone:  (415) 554-3976; Facsimile:   (415) 554-4248
E-Mail:      ruth.bond@sfgov.org

Attorneys for Defendant, CITY AND COUNTY OF SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| FREDA J. DUFF-BROWN, ET AL., | Case No. CV 11-03917 TEH |
|---|---|
| Plaintiffs, | **DEFENDANT CITY AND COUNTY OF SAN FRANCISCO'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** (Fed. R. Civ. Proc. Rule 56) |
| vs. | |
| CITY AND COUNTY OF SAN FRANCISCO, | |
| Defendant. | |
| | Hearing Date: May 19, 2014 |
| | Time:           10:00 a.m. |
| | Place:          Courtroom 2, 17th Floor |
| | Trial Date:    June 24, 2014 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION ...............................................................................................1

FACTUAL BACKGROUND................................................................................2

    I.       PLAINTIFFS' EMPLOYMENT WITH THE CITY .................................2

    II.      THE 207(J) AGREEMENT DATES BACK TO LATE 1990S WHEN UNION MEMBERSHIP VOTED FOR THE 80-HOUR 14-DAY PAY PERIOD. .............3

    III.     THE SCHEDULES ARE RENEWED DURING 2004 NEGOTIATIONS REGARDING THE CONVERSION OF THE MHRF TO THE BHC. .................4

        A.      DPH Reorganizes The MHRF .......................................................4

        B.      The Union Representatives Testified That At The 2004 Negotiations The City And The Union Renewed The Understanding That Employees In Plaintiffs' Classifications Would Be Paid Overtime Based On A 14-day, 80-hour Work Period ...................................................................5

            1.      Former SEIU Local 250 Representative Kim Tavaglione ..............5

            2.      SEIU Shop Steward Larry Bevan ...................................................8

        C.      The Testimony of City Representatives Louise Brooks Houston and Robert Thomas Was Consistent With That of The Union Representatives That There Was An Agreement On An 80-Hour 14-Day Pay Period ........9

    IV.     THE DEPARTMENT OF LABOR INVESTIGATED THE BHC'S PRACTICES REGARDING PAYMENT OF OVERTIME AND FOUND THERE WAS NO FLSA  VIOLATION ............................................................10

    V.      PROCEDURAL HISTORY..............................................................11

ARGUMENT...................................................................................................12

    I.       THE FLSA HOSPITAL EXEMPTION...............................................12

    II.      RECENT TESTIMONY ESTABLISHES THAT THE UNION AND CITY HAD A VALID UNDERSTANDING AND AGREEMENT UNDER THE 207(J) EXEMPTION ..............................................................13

    III.     PLAINTIFFS IMPLICITLY AGREED TO PAYMENT OF OVERTIME BASED ON THE 80-HOUR, 14-DAY PAY PERIOD.........................................15

    IV.     THE AGREEMENT IS A LONGSTANDING PAST PRACTICE THAT NEED NOT BE REFLECTED IN THE COLLECTIVE BARGAINING AGREEMENT...................................................................16

    V.      PLAINTIFFS ARE NOT ENTITLED TO LIQUIDATED DAMAGES .............18

CONCLUSION................................................................................................19

## **TABLE OF AUTHORITIES**

**State Cases**

*Deleon v. Verizon Wireless, LLC*
   207 Cal.App.4th 800 (2012) ........................................................15

*Donovan v. RRL Corp.*
   26 Cal.4th 261 (2001) ...............................................................15

*Riverside Sheriff's Ass'n v. County of Riverside*
   106 Cal.App.4th 1285 (2003) ....................................................16

**State Statutes & Codes**

California Government Code
   § 3503 ...................................................................................14

California Government Code
   § 3504 ...................................................................................14

California Government Code
   § 3505 ...................................................................................14

**Federal Cases**

*Amador v. Guardian Installed Servs., Inc.*
   575 F. Supp.2d 924 (N.D. Illinois 2008) ....................................16

*Anderson v. Liberty Lobby, Inc.*
   477 U.S. 242 (1986) .................................................................13

*Arnold v. Ben Kanowsky, Inc.*
   361 U.S. 388 (1960) .................................................................13

*Auer v. Robbins*
   519 U.S. 452 (1997) .................................................................13

*Barrentine v. Arkansas-Best Freight Sys., Inc.*
   450 U.S. 728  (1981) ................................................................14

*Brotherhood of Locomotive Engineers v. Burlington Northern R. Co.*
   620 F.Supp. 163 (D.C. Mont. 1985) ...........................................16

*Chao v. A-One Medical Services, Inc.*
   346 F.3d  908 (9th Cir. 2003) ....................................................18

*Farris v. County of Riverside*
   667 F.Supp.2d 1151 (C.D. Cal. 2009) ........................................10

*Frankl ex. rel. N.L.R.B. v. HTH Corp.*
   693 F.3d 1051 (9th Cir. 2012) ...............................................1, 16

*Lederman v. Frontier Fire Prot., Inc.*
   685 F.3d 1151 (10th Cir. 2012) ..................................................................13

*Leever v. Carson City*
   360 F.3d 1014 (9th Cir. 2004) ...................................................................14

*Martin v. City of Richmond*
   504 F.Supp.2d 766 (N.D. Cal. 2007) ..........................................................10

*McLaughlin v. Richland Shoe Co.*
   486 U.S. 128 (1988).....................................................................................18

*McCrary v. Weyerhaeuser Co.*
   457 F.2d 862 (9th Cir. 1972) ...........................................................1, 2, 16

*Parth v. Pomona Valley Hospital Medical Center*
   630 F.3d 794 (9th Cir. 2010) .....................................................................12

*Service Employees Intern. Union, Local 102 v. County of San Diego*
   60 F.3d 1346 (9th Cir. 1994) ..............................................................13, 18

*Wallace v. Countrywide Home Loans, Inc.*
   2009 WL 4349534 (C.D. Cal. 2009) ..........................................................10

*Yi v. Sterling Collision Centers, Inc.*
   480 F.3d 505 (7th Cir. 2007) .....................................................................13

**Federal Statutes**
29 U.S.C.
   § 207 ..............................................................................................................1

29 U.S.C.
   § 207(a)(1) ...................................................................................................12

29 U.S.C.
   § 207(j)...............................................................................1, 2, 12, 13, 15, 18

29 U.S.C.
   § 207(k) ........................................................................................................14

29 U.S.C.
   § 260 .............................................................................................................18

29 C.F.R.
   § 778.601 ................................................................................................1, 13

29 C.F.R.
   §778.601(c) ..................................................................................................13

Federal Rules of Civil Procedure
   § 56(a) ..........................................................................................................13

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

**TO ALL PLAINTIFFS AND THEIR ATTORNEY OF RECORD:**

**PLEASE TAKE NOTICE** that on May 19, 2014 at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 2, 17th Floor of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue in San Francisco, California, the Honorable Thelton E. Henderson presiding, Defendant City and County of San Francisco and its constituent department the Department of Public Health (collectively the "City" or "Defendant"), will, and hereby does, move this Court for an order granting summary judgment on Plaintiffs' claim for relief as alleged in the Complaint.  This motion is made under Rule 56 of the Federal Rules of Civil Procedure, on the grounds that there are no genuine issues of disputed fact and:

1.      Plaintiffs' claim for unpaid overtime under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §207 should be denied because the City and Plaintiffs' unions agreed to a work period of fourteen consecutive days in lieu of the workweek of seven consecutive days for purposes of overtime computation before the employees performed the work.  *See* 29 U.S.C. § 207(j); 29 C.F.R. § 778.601. Therefore, Plaintiffs' are only entitled to overtime in the event they work in excess of 80 hours in the fourteen day period or eight hours in a day.  They are not entitled to overtime for eight hours when they work 48 hours in one week and 32 hours in the other week during the 14-day work period.

2.      The City's practice of paying overtime based on the 80-hour 14-day pay period is a longstanding past practice that has can become a term and condition of employment without being reflected in a bargaining agreement.  *See Frankl ex. rel. N.L.R.B. v. HTH Corp.*, 693 F.3d 1051 (9th Cir. 2012).

3.      Plaintiffs' ongoing acceptance of this method of overtime payment constituted an implied understanding or agreement to the Department's payment of overtime based on an 80-hour, 14-day pay period.  *See McCrary v. Weyerhaeuser Co.*, 457 F.2d 862, 864 (9th Cir. 1972).

4.      Plaintiffs are not entitled to liquidated damages because they cannot establish that any alleged violation of the FLSA by the City was willful.

1        This Motion is based on the Memorandum of Points and Authorities, the Declarations of Ruth

2    M. Bond, Louise Brooks Houston, Robert Thomas, Linda Sims and Sharon McCole Wicher and

3    attached exhibits; the deposition testimony of Kim Tavaglione, Larry Bevan, Robert Thomas, Louise

4    Brooks Houston, Martin Gran, Freda Duff-Brown and Dennis Lim.

5    Dated:  April 11, 2014

6                              DENNIS J. HERRERA
                          City Attorney

7                              ELIZABETH SALVESON
                          Chief Labor Attorney

8                              RUTH M. BOND
                          Deputy City Attorney

9

10                         By:*/s/Ruth M. Bond*_____
                          RUTH M. BOND

11                             Attorneys for Defendant
                          CITY AND COUNTY OF SAN FRANCISCO

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

This case concerns Plaintiffs' claim that the City violated the Fair Labor Standards Act ("FLSA") by failing to pay them overtime for hours they worked in excess of 40 in a week, instead paying them pursuant to the FLSA hospital exemption. *See* 29 U.S.C. §207(j). That exemption allows employees of hospitals and residential care establishments to reach agreement with their employer, before the performance of the work, that they will be paid overtime for hours worked in excess of 80 in a 14 day period, instead of in excess of 40 in a week.

The City is entitled to summary judgment because the undisputed facts demonstrate that since the late 1990s, the City's Department of Public Health has paid Plaintiffs and other employees assigned to its mental health facility based on an 80-hour pay period as a result of agreements with Plaintiffs' union. Under the 80-hour schedule, employees work 32 hours one week and 48 hours the next week. Union representatives Kim Tavaglione and Larry Bevan, who negotiated Plaintiffs' schedules in 2004, recently testified that the unions requested the 80-hour pay period to ensure that employees could keep their alternating weekends off. Thus the 207(j) exemption benefitted both the City and employees.

The Court previously denied the City's motion for summary judgment finding disputed issues of fact regarding whether the union had agreed to payment of overtime based on an 80-hour, 14 day pay period instead of a 40 hour work week. Specifically the Court found a dispute regarding (1) whether Kim Tavaglione believed employees should sign individual waivers to forego overtime based on a 40-hour work week and (2) whether Mr. Bevan realized in proposing the schedules he was agreeing to waive payment of overtime based on a 40-hour work week. There is no longer any dispute regarding these facts.

First, Ms. Tavaglione testified that the City and union understood when they reached agreement about schedules that the City would pay overtime based on the 80 hour, 14-day period. She testified that the union did not waive employees' FLSA rights generally, rather the City and union exercised their rights under the FLSA to take advantage of an alternative work schedule that was mutually beneficial to both employer and employee. Second, Tavaglione testified that although waivers came up during negotiations, it became a "nonissue" once the parties reached agreement. The

union did not require such waivers and did not advise its members to sign waivers during the bid for schedules.  Accordingly, once the schedules were in place, the union did not challenge the City's overtime pay practices.

Former shop steward Larry Bevan testified that the 207(j) agreement dated back to the late 1990s when the union voted to adopt the 80-hour schedule and waive overtime based on a 40-hour work week to preserve their weekends off.  When he put together proposed schedules in 2004, he therefore considered this agreement "precedent" and understood that the practice would continue.

Moreover, the City's payment of overtime based on an 80-hour pay period is a longstanding past practice dating back to the late 1990s.  Plaintiffs did not challenge this practice until 2009 when they complained to the Department of Labor (which found no FLSA violation).  As such, the practice became a term and condition of employment, even though it was not reflected in the parties' Collective Bargaining Agreement.  Plaintiffs' acceptance of the City's method of paying overtime for more than a decade in the very least resulted in an implied understanding and agreement.  *See McCrary v. Weyerhaeuser Co.*, 457 F.2d 862, 864 (9th Cir. 1972).

Finally, in the event that the Court finds that the 207(j) agreement is invalid, the City did not willfully violate the FLSA and acted in good faith in paying overtime based on the 80-hour, 14-day period given the union's representations during negotiations and Plaintiffs' implicit agreement with the practice for well over a decade.  Therefore, Plaintiffs are not entitled to liquidated damages.

## FACTUAL BACKGROUND

## I.   PLAINTIFFS' EMPLOYMENT WITH THE CITY

Plaintiffs are current and former employees of the City's Department of Public Health ("DPH" or "Department").  (Complaint ¶ 2.)  Plaintiffs are in the job classifications 2312 Licensed Vocational Nurse, 2314 Public Health Team Leader, 2303 Patient Care Assistant, and 2305 Psychiatric Technician, assigned to the Department's Behavioral Health Center ("BHC").  (*Id.*)

Plaintiffs' job classes are all currently represented by Service Employees International Union ("SEIU") Local 1021.  (Complaint ¶ 5.)  Until around 2008, Plaintiffs' classifications were represented by SEIU Locals 790 (miscellaneous), 535 and 250, which merged to form Local 1021.   (Declaration of Robert Thomas in Support of Defendant's Motion for Summary Judgment ("Thomas Dec.") ¶ 5;

Tavaglione Dep. 13:12-14.)[1]  Before the merger, SEIU Local 250 represented the 2303 Patient Care Assistant, 2305 Psychiatric Technician, and 2312 Licensed Vocational Nurse classifications.  Local 790 (miscellaneous) represented the 2314 Public Health Team Leader.  Nurses were in a separate SEIU Local 790 unit which represents Staff and Per Diem Nurses.  (Thomas Dec. ¶ 5; Tavaglione Dep. at 19:7-23.)

Since at least the late 1990s, employees in Plaintiffs' job classifications assigned to the BHC and its predecessor, the Mental Health Rehabilitation Facility ("MHRF") have been scheduled to work a two week (or 14 day) pay period in which they work 32 hours the first week and 48 hours the second week, amounting to 80 hours during that period.  (Complaint ¶¶ 6-7.)  Plaintiffs confirmed that during their entire tenure at BHC they have worked 32/48 schedules and been paid overtime based on the 80 hour pay period.  (Deposition of Freda J. Duff-Brown ("Duff-Brown Dep.") at 17:9-19; Deposition of Dennis Lim ("Lim Dep.") at 18:16-23, 20:8-21:16, 32:19-34:21; *see also* Deposition of Larry Bevan ("Bevan Dep.") at 20:21-24.)[2]  For example, Plaintiff Duff-Brown testified that she had such a schedule during the entire period she worked at the MHRF/BHC (1998-2011).  (Duff-Brown Dep. at 17:9-19.)  Ms. Duff-Brown and Plaintiff Dennis Lim both testified that they were paid overtime for hours worked in excess of the 80-hour pay period rather than a 40-hour work week.  (*Id.* at 17:20-18:14; Lim Dep. at 32:19-34:21.)  Plaintiffs Duff-Brown and Lim testified that their union was aware of these schedules and had agreed to them.  (Duff-Brown Dep. at 46:12-48:6; 63:12-66:2; Lim Dep. at 71:1-23.)

## II.   THE 207(J) AGREEMENT DATES BACK TO LATE 1990S WHEN UNION MEMBERSHIP VOTED FOR THE 80-HOUR 14-DAY PAY PERIOD.

The 14-day, 80-hour pay period had been established in the late 1990s, when management of the MHRF attempted to cut down on overtime costs by proposing to take away staff members' weekends off so they would not have to fill weekend shifts using overtime.  (Bevan Dep. at 20:21-

---

[1] The Thomas Declaration is attached to the Declaration of Ruth M. Bond in Support of Motion for Summary Judgment ("Bond Dec.") as Exhibit A.  This declaration was originally submitted in support of the City's initial summary judgment motion, filed on September 24, 2012.

[2] All excerpts of the Deposition testimony and deposition exhibits cited herein are attached to the Bond Declaration as Exhibit B in alphabetical order by last name of the witness.

21:7.)  According to former SEIU Local 250 Shop Steward Larry Bevan,[3] members of Local 250 objected to management's proposal and as a compromise, the union agreed to the alternative work schedules to preserve the weekends off.  (*Id*. at 21:7-20.)  The union membership voted on the agreement and unanimously approved it.  (*Id*.; *see also* 56:3-57:21.)  Following the vote, the 32/48 schedules were implemented.  (*Id*. 61:24-62:21.)  Bevan described the schedules as "a prior practice, that the precedent had been set."  (*Id*. at 23:12-13.)

## III.   THE SCHEDULES ARE RENEWED DURING 2004 NEGOTIATIONS REGARDING THE CONVERSION OF THE MHRF TO THE BHC.

### A.   DPH Reorganizes The MHRF

The BHC was formerly called the Mental Health Rehabilitation Facility ("MHRF").  (Duff-Brown Dep. 16:24-17:1; Lim Dep. 24:7-14.)  However, in July 2004, the Department reconfigured the MHRF from a skilled nursing facility to a new model that operates under multiple licenses to offer various levels of care for the mentally ill.  (*Id*.)

As part of this reconfiguration process, in May 2004, the City invited all unions who represented employees at the MHRF to engage in a meet and confer process regarding the effect of the reorganization on employees.  (Deposition of Louise Brooks Houston ("Houston Dep.") Exhibit 1 (Declaration of Louise Brooks Houston in Support of Defendant's Motion for Summary Judgment[4] ¶ 5; Deposition of Kim Tavaglione ("Tavaglione Dep.") at 7:5-8:17; 21:2-7; 24:23-26:10.)  These union locals included SEIU Locals 790 (miscellaneous), 250 and 535.  (Thomas Dec. ¶ 5; Tavaglione Dep. at 24:23-25:14.)

On May 12, 2004, DPH Senior Personnel Analyst Louise Brooks Houston invited the unions to meet and confer.  (Brooks Houston Dec. ¶ 5 & Exh. A.)  Locals 250, 790 and 535 accepted the invitation and chose to meet and confer as a group.  (*Id*; Tavaglione Dep. 24:9-26:2.)

---

[3] Mr. Bevan has been employed by the City as a 2305 psychiatric technician since 1996.  He is currently assigned to Laguna Honda Hospital where he continues to serve as shop steward for SEIU Local 1021.  (Bevan Dep. at 24:13-25:1, 27:16-18.)

[4] The Brooks Houston Declaration was originally submitted in support of the City's initial summary judgment motion, filed on September 24, 2012.

### B. The Union Representatives Testified That At The 2004 Negotiations The City And The Union Renewed The Understanding That Employees In Plaintiffs' Classifications Would Be Paid Overtime Based On A 14-day, 80-hour Work Period

In denying the City's first Motion for Summary Judgment Motion, this Court found "a genuine dispute as to whether there was mutual assent by both sides to adopt a 14-day base period, thereby waiving the employees' right to receive overtime pay during the 48-hour weeks."  (Order Re Cross-Motions For Summary Judgment filed on January 15, 2013, Document #51 ("MSJ Order.")  The Court based this ruling on two disputed issues of fact:  (1) whether Kim Tavaglione communicated to the City that employees "should sign waivers during the bidding process" (MSJ Order at 10); and (2) whether Larry Bevan agreed to waive employees' overtime in proposing his schedules (MSJ Order at 11).

Both Tavaglione and Bevan have now testified that the City and unions had an understanding and agreement that employees would have an 80-hour, 14 day work period and that overtime would be calculated based on those schedules.

#### 1. Former SEIU Local 250 Representative Kim Tavaglione

Kim Tavaglione served as the SEIU Local 250 labor representative for employees at San Francisco General Hospital and the MHRF/BHC from 2002-2005.  (Tavaglione Dep. at 12:4-14:2; 15:22-16:12.)  Ms. Tavaglione was the SEIU Local 250 representative who participated in the negotiations between the City and unions in June of 2004 regarding the impact on employees that would result from DPH's conversion of the MHRF to the BHC.  (*Id*. at 7:5-8:17; 21:2-7; 24:23-26:10.)  During the 2004 negotiations, Ms. Tavaglione was aware that many employees at the MHRF worked a 14-day work period in which they worked 32 hours the first week and 48 hours the second week.  (*Id*. at 20:8-16.)

Ms. Tavaglione testified that one of the issues the City and unions negotiated about was employee schedules.  (*Id*. at 27:7-21.)  More specifically, Ms. Tavaglione testified that during negotiations, the City proposed schedules that would take away workers' weekends off by doing away with the 32/48 schedule, and that the employees objected.  (*Id*. 27:9-28:6; *see also* 37:18-38:5.)  As a result, the union countered with schedules that preserved the 32/48 schedule in an 80 hour pay period.  (*Id*. 28:8-29:6; *see also* 38:22-39:10.)  The City initially rejected the union's proposed schedules

because it did not want to incur over-time costs for the 48-hour work week. (*Id*. 29:7-24.) In response, Ms. Tavaglione told City representatives that "hospitals could work an 80 hour -- 80 hours every two weeks and that I would talk to our attorney ..." (*Id*. 30:1-4; 31:24-32:13.) Ms. Tavaglione then consulted with the union's attorney who told her that such schedules were common, which Ms. Tavaglione conveyed to City representatives. (*Id*. 30:5-18.) She also made it clear to City representatives that the City would not have to pay overtime for the 8 hours in the week that employees worked 48 hours. (*Id*. 30:1-31:19.)

Ms. Tavaglione turned over the responsibility of proposing schedules to shop steward Larry Bevan because "he worked with those people, he knew them, and he wrote up the schedules and he kind of ran them by people because he knew everybody." (Tavaglione Dep. at 32:23-33:2.) Ms. Tavaglione said that getting the City to agree to the Union's schedules "took some convincing" because of the City's overtime concerns (*id*. at 30:22), but ultimately the City accepted the schedules proposed by the union. (*Id*. 33:11-34:2; *see also* 41:16-42:4.)

Ms. Tavaglione further testified that it was the union and City's understanding that employees would earn overtime only after they had worked 80 hours in a 14-day period and that they were agreeing to calculate overtime based on this extended pay period instead of a 40 hour work week. (Tavaglione Dep. 58:18-25; 59:7-60:23; 61:21-25.) Ms. Tavaglione testified as follows:

> MS. BOND:  Q.  I think when I was first questioning you about your conversation with [union attorney] Ann Yen, I think you said that she said that hospitals do it all the time, an 80-hour work week or an 80-hour pay period. Do you recall that?
>
> A.  Yes.
>
> Q.  And your understanding was that that meant that employees would earn overtime only after they had worked 80 hours; is that correct?
>
> A.  Correct.
>
> Q.  Okay. So they weren't forgoing their right to overtime, it was just a different -- it was just under a different calculation; is that understood?
>
> A.  Yes.
>
> Q.  Okay. And during the negotiations about the conversion to the MHRF it was the understanding of the union and the City that that -- that's what those schedules that Larry proposed would need, correct?
>
> MR. DAVIS:  I would object to that question. Not only is it leading, but it's unintelligible.
>
> MS. BOND:  Q.  Let me ask it -- if you understand it, you can answer it. If not, I'll reword it.

A.   There was multiple parts to it and my brain is like running on low sugar right now.

Q.   Understood.  So during the negotiations the City proposed schedules; union said, no, we don't like those schedules, right?

A.   Yes.

Q.   Then the union Local 250 --

A.   They took away people's weekends.

Q.   Then the union said, well, we'll propose schedules that will preserve people's weekends, right?

A.   M-hm.

Q.   And then Larry proposed schedules that provided for an 80-hour pay period over two weeks, right?

A.   M-hm.

Q.   32 hours worked in one week?

A.   (Nods head.)

Q.   48 hours worked in the other week, right?

A.   M-hm.

Q.   Okay.  And the understanding was that employees would get paid overtime after the 80 hours --

A.   Yes.

Q.   -- in that two-week period, right?

A.   Yeah, because it's posted in the wage orders that...

Q.   And the union understood that and the City understood that, right?

A.   That it was posted in the wage orders?

Q.   No, that overtime would be paid based on the 80-hour pay period?

A.   Yes.

Q.   Okay.  And that was understood at the table?

A.   That the 80 hours -- the 80-hour rule for every two weeks?

Q.   Right.

A.   Wait.  One more time.

Q.   It was understood that employees would get paid overtime after -- based on the 80-hour pay period?  That was my question.

A.   Yes.

(Tavaglione Dep. 58:12-60:23.)  During the bidding process, the union did not inform its members that they should sign waivers.  (*Id.* at 62:13-15.)  Ms. Tavaglione testified as follows:

Q.   Did anyone from the union communicate with employees about signing waivers or anything like that?

A.   We did not.

(*Id.*) Ms. Tavaglione said they did not inform employees that they should sign waivers because "it was something for the City to do.  It wasn't -- it wasn't to protect us; it was to protect the City, and at some point the City -- I don't know.  I just assumed that at some point the City had made up its mind that it wasn't necessary or whatever."  (*Id.* at 62:17-21.)  She stated that although in another instance a small group of workers in a different classification had signed individual waivers regarding overtime (*id.* at 10:8-11:25; 31:24-32:9), in this case the waivers "became a nonissue."  (*Id.* at 31:19, *see also id.* at 31:20-34:4.)  Accordingly, after employees bid on the schedules that the City and union agreed to, the union did not object to the calculation of overtime based on an 80-hour work week and the union did not consider this practice a problem.  (*Id.* at 60:24-61:12, 63:11-64:6.)

### 2. SEIU Shop Steward Larry Bevan

Larry Bevan was a shop steward for SEIU 250 in June 2004, during negotiations regarding the conversion of the MHRF to the BHC.  (Deposition of Larry Bevan ("Bevan Dep.") 18:10.)  Mr. Bevan had worked at the MHRF from 1998 to 2003, when he was reassigned to Laguna Honda Hospital.  Ms. Tavaglione asked Bevan to assist with the 2004 negotiations because of his knowledge of the history of the scheduling issue; she therefore assigned Mr. Bevan the task of drafting schedules that would preserve employees' weekends off.  (*Id.* at 18:11-17, 21:14-20.)  He said that he and Ms. Tavaglione discussed the fact that the schedules dated back to the late 1990s when the union membership voted to adopt the 80-hour 14-day pay period.  (*Id.*)  He said that he and Ms. Tavaglione "did talk about the prior practice and the fact that we had that vote when the original process of taking away the weekends off for members in 1999."  (*Id.* at 21:17-20.)  He testified as follows regarding the conversation he and Ms. Tavaglione had about the past practice regarding schedules:

> Q.   And did you bring up that topic of what had occurred in 1999 to Kim?
>
> A.   Kim had asked me what did we do the first time around when management tried to -- pardon my language -- were messing around with the staff schedules. She asked me what did we do the last time when management tried to do the same, in her words, stunt.  And I told her.
>
> Q.   Is that because you had this conversation -- excuse me.  Let me rephrase that. Is that because Kim Tavaglione was not present during the 1999 negotiations?
>
> A.   Correct.  She wasn't working for Local 250 at the time.  I was the chief shop steward of the facility and the rep at that time was Brett.  I can't even tell you what Brett's last name was at this point.  It's been so many years.
>
> Q.   And then you told Kim what you told us today?

A.   Correct.

Q.   That back in 1999 there was an issue that pertained to it and the employees voted at that time; is that correct?

A.   Correct.

Q.   What did Kim say after that?  Or what did Kim say in response to what you told her?

A.   We both agreed that it was a prior practice, that the precedent had been set.

Q.   Did Kim tell you that written waivers would not be required?

A.   We never talked about waivers.

Q.   Did you talk about whether or not another vote would need to be taken by the members of Local 250?

A.   Not that I recall.

Q.   So there was no discussion on that topic of a vote at all?

A.   No.  I just remember the discussion was that the members had asked Kim to get me involved to get them their weekends off.  And that's the only reason I was involved, because I was no longer working at the MHRF. I was now working at South of Market Mental Health and I had actually to get days off from my work and vacation to go do this for the members.  And they were very clear that they wanted their weekends off.  They were pissed off at the downsizing, they were pissed off at management for screwing around with their schedules and they wanted their schedules back.  And that was the only reason I got involved.

(*Id.* at 22:12-24:8.)  He further testified that during the 2004 negotiations, there were "a lot of" meetings with management that were not documented in the bargaining notes regarding the schedules he proposed where the parties discussed the fact that the 80-hour pay period dated back to the 1990s. (*Id.* at 33:25-36:7.)  Therefore, he understood that this prior practice would continue when he created and proposed the schedules.  (*Id.* at 44:1-47:15.)  Bevan understood that individual waivers were not necessary "[b]ecause we had already discussed the prior practice" with management during the 2004 negotiations.  (*Id.* at 44:3-4, 44:24-45:7.)  Bevan then created the schedules that were ultimately adopted.  (*Id.* at 43:7-17; Tavaglione Dep. at 59:21-60:18.)

### C.   The Testimony of City Representatives Louise Brooks Houston and Robert Thomas Was Consistent With That of The Union Representatives That There Was An Agreement On An 80-Hour 14-Day Pay Period

Both Louise Brooks Houston and Robert Thomas testified, consistent with Ms. Tavaglione and Mr. Bevan, that during the 2004 negotiations, the union and City agreed to continue the 32/48 schedules in which overtime would be calculated based on an 80-hour, 14-day pay period as allowed by 29 U.S.C. § 207(j).  (Deposition of Louise Brooks Houston ("Houston Dep.") at 52:23-53:24;

1    Deposition of Robert Thomas at 32:22-34:21.)  On July 22, 2004, Ms. Brooks Houston sent all unions

2    a letter summarizing the meet and confer process.  (Houston Dep. at 11:19-13:6 & Exh. 1 (at pp.

3    CCSF 000476-000481.)  The letter memorializes the fact that the parties had accepted the union's

4    proposal regarding work schedules.  (*See id*. at p. CCSF 000479; *see also* Tavaglione Dep. at 37:18-

5    42:4.)

6    **IV.   THE DEPARTMENT OF LABOR INVESTIGATED THE BHC'S PRACTICES**
     **REGARDING PAYMENT OF OVERTIME AND FOUND THERE WAS NO FLSA**
7    **VIOLATION**

8          In around September or October 2009, Plaintiff Dennis Lim submitted a complaint to the

9    United States Department of Labor ("DOL") regarding the City's alleged failure to pay overtime.

10   (Lim Dep. 51:22-52:6, 59:10-17; *see also* (Exhibit D to Bond Dec., Document titled "Mental Health

11   Rehabilitation Center (SFGH) Case ID: 1563024") summarizing the DOL's investigation and

12   conclusion ("DOL Investigative Report") at p. 1-2.)[5]  In response, the DOL conducted an

13   investigation.  (Lim Dep. 67:17-70:11.)  During the investigation, the City provided the Department of

14   Labor San Francisco District Office with Ms. Houston's July 22, 2004 letter (Houston Dep. Exh. 1 at

15   pp. CCSF 000476-000481.) summarizing the parties' meet and confer sessions, the proposed schedules

16   exchanged during those sessions, and time records and payroll information for the previous two years

17   for employees (including classifications 2303, 2305, 2312 and 2314) of the Mental Health

18   Rehabilitation Center located on the third floor of the BHC.  (Declaration of Janet Carroll Richardson

19   In Support of Defendant's Opposition to Plaintiffs' Partial Motion for Summary Judgment

20   ("Richardson Dec.")[6] Exhs. A & B.)

21   _____

22        [5] The City requests that the Court take judicial notice of documents produced by the
     Department of Labor in response to the City's request for files under the Freedom of Information Act
23   ("FOIA").  Portions of the DOL's response to the City's FOIA request are attached to the Bond
     Declaration as Exhibit D.  The City's FOIA Request is attached to the Bond Declaration as Exhibit C.
24   Federal Rule of Evidence 201, Judicial Notice of Adjudicative Facts, authorizes the court to "judicially
     notice a fact that is not subject to reasonable dispute because it can be accurately and readily
25   determined from sources whose accuracy cannot reasonably be questioned."  The California courts
     have consistently allowed admission of Department of Labor reports under Rule 201.  *Farris v. County*
26   *of Riverside*, 667 F.Supp.2d 1151 (C.D. Cal. 2009) (DOL letter ruling); *Wallace v. Countrywide Home*
     *Loans, Inc.* 2009 WL 4349534 (C.D. Cal. 2009) (DOL Opinion letter); *Martin v. City of Richmond*,
27   504 F.Supp.2d 766 (N.D. Cal. 2007) (DOL advisory memorandum).

          [6] The Richardson Declaration is attached to the Bond Dec. as Exhibit E.  It was originally filed
28   on October 15, 2012, in Opposition to Plaintiffs' motion for partial summary judgment.

DEF'S MSJ – CASE NO. CV C 11-03917 (TEH)          10          n:\labor\li2014\120225\00918099.doc

After reviewing the documentation and meeting with the employees' union representative and the subject employees themselves, the DOL reached the following conclusion:

> [U]nder 7(j) of the Act, the employer and the employee were in an agreement/understanding of the work schedule before the employees performed the work … A work period of fourteen consecutive days for purposes [sic] is accepted in lieu of the workweek of seven consecutive days for purposes of overtime computation.

(Bond Dec. Exh. D (DOL Investigative Report) at p. 4.)  The DOL investigator recommended "to administratively close the case, as the employer is in compliance with the Fair Labor Standards Act." (*Id*. at p.5.)

The DOL investigator also informed Mr. Lim that she had met with the City and union and confirmed that there was an agreement regarding payment of overtime.  (Lim Dep. 70:14-24.)  The investigator advised Lim to contact the union.  (*Id*. at 70:25-71:1.)  Lim then contacted SEIU Local 250 representative Bevan who also informed him that there was an agreement regarding how overtime was to be paid.  (*Id*. at 71:1-23.)

## V.   PROCEDURAL HISTORY

Plaintiffs filed this case on August 17, 2011, alleging one cause of action that the City violated the Fair Labor Standards Act by failing to pay Plaintiffs overtime for 8 hours each week that they worked 48 hours.  At an early case management conference, the parties agreed to conduct very limited discovery and file cross-motions for summary judgment regarding the issue of liability.  (*See* Civil Minutes dated February 12, 2012 (ordering cross motions for summary judgment to be filed on June 6, 2012.)  On January 15, 2013, the Court denied the parties' cross motions for summary judgment, finding that there were disputed issues of material fact as to whether there was a valid agreement under Section 207(j).

At the June 24, 2013 case management conference, the parties agreed to engage in further discovery.  The parties have taken several depositions of City and union representatives involved in the 2004 negotiations, as well as two of the Plaintiffs.[7]  At the March 3, 2014 case management

---

[7] Plaintiffs deposed City representatives Louise Brooks Houston and Robert Thomas on November 4 and 18, 2013, respectively.  Plaintiffs also deposed the City's Employee Relations Director, Martin Gran, on December 9, 2013, and Mr. Bevan on December 12, 2013.   The City deposed Plaintiffs Freda J. Duff-Brown on November 22, 2013, and Dennis Lim on November 25,

conference, the Court set a trial date of June 24, 2014 and a dispositive motion deadline of April 14, 2014.

## ARGUMENT

There was a longstanding and valid agreement between Plaintiffs' union and the Department of Public Health to pay employees at the BHC according to the 207(j) exemption.  As Larry Bevan testified, the City and Plaintiffs' union entered an agreement as far back as 1999 that employees in these classifications assigned to the MHRF would be paid overtime based on an 80-hour, 14-day pay period.  At that time, the members in these classifications voted to endorse this agreement to ensure that they could get alternating weekends off.  As Ms. Tavaglione and Mr. Bevan's testimony demonstrates, this agreement was renewed during negotiations in May and June 2004 relating to the impact of the City's reorganization of the MHRF into the BHC.

## I.   THE FLSA HOSPITAL EXEMPTION

Under the FLSA, employers generally are required to pay overtime to employees who work in excess of 40 hours in any work week.  *See* 29 U.S.C. § 207(a)(1).  However, there are exceptions to this rule.  Employees of hospitals and residential care establishments can reach agreement with their employer, before the performance of the work, that they will only be paid overtime for hours worked in excess of eighty in a fourteen day period.  See 29 U.S.C. §207(j).  That section provides:

> (j)Employment in hospital or establishment engaged in care of sick, aged or mentally ill
>
> No employer engaged in the operation of a hospital or an establishment which is an institution primarily engaged in the care of the sick, the aged, or the mentally ill or defective who reside on the premises shall be deemed to have violated subsection (a) of this section if, pursuant to an agreement or understanding arrived at between the employer and the employee before performance of the work, a work period of fourteen consecutive days is accepted in lieu of the workweek of seven consecutive days for purposes of overtime computation and if, for his employment in excess of eight hours in any workday and in excess of eighty hours in such fourteen-day period, the employee receives compensation at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(j) (emphasis added); *see also Parth v. Pomona Valley Hospital Medical Center*, 630 F.3d 794, 797 n.1 (9th Cir. 2010) ("Section 207(j) offers hospitals and certain other institutions to agree with their employees to calculate weekly overtime over a fourteen-day period; overtime then is

---

2013.  The City deposed Ms.Tavaglione, former representative for SEIU Local 250, on December 5, 2013.

paid for work exceeding 8 hours in one day or 80 hours in a fourteen day period [the 8/80 plan].").[8]

Such agreements for an 80-hour work period need not be entered into with the individual employee.

Rather the agreement "may be arrived at directly with the employee or through his representative." 29

C.F.R. § 778.601. The agreement "need not be in writing, but if it is not, a special record concerning it

must be kept as required by part 516 of this chapter." 29 C.F.R. §778.601(c). Moreover, "[t]he

election to use the 14–day period in lieu of the workweek must, like selection of an employee's

workweek be with the intent to use such period permanently or for a substantial period of time." *Id.*

(emphasis added.); *see also* MSJ Order at pp. 5-6.

Exemptions under the FLSA "'are to be narrowly construed against the employers seeking to

assert them and their application limited to those establishments plainly and unmistakably within their

terms and spirit.'" MSJ Order at p.6 (quoting *Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392

(1960)); *see also Auer v. Robbins* 519 U.S. 452, 462 (1997) (exemptions "are to be withheld except as

to persons 'plainly and unmistakably within their terms and spirit.'" (citation omitted); *Service*

*Employees Intern. Union, Local 102 v. County of San Diego*, 60 F.3d 1346, 1350 (9th Cir. 1994)).

As this Court previously decided, the City must prove that it qualifies for the exemption by a

preponderance of the evidence. MSJ Order at 6-7 (citing *Lederman v. Frontier Fire Prot., Inc.,* 685

F.3d 1151, 1157-58 (10th Cir. 2012); *accord, Yi v. Sterling Collision Centers, Inc.*, 480 F.3d 505, 506-

08 (7th Cir. 2007) ("nothing in the [FLSA], the regulations under it, or the law of evidence justifies

imposing a requirement of proving entitlement to the exemption by 'clear and affirmative

evidence.'")).

## II.   RECENT TESTIMONY ESTABLISHES THAT THE UNION AND CITY HAD A VALID UNDERSTANDING AND AGREEMENT UNDER THE 207(J) EXEMPTION

The City has met its burden to demonstrate by a preponderance of the evidence that the City

and union had a valid agreement or understanding under § 207(j). Summary judgment is appropriate

when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[8] There is no claim in this case that the City failed to pay overtime on hours worked in excess of 8 in a day.

It is undisputed that the calculation of overtime based on the 80-hour, 14-day pay period is a longstanding practice dating back to at least 1999.  Both Plaintiffs Duff-Brown and Lim testified that since they began working at the BHC in the late 1990s, they were paid over-time based on an 80-hour, 14-day pay period.  (Duff-Brown Dep. at 17:9-19; Lim Dep. at 18:16-23, 20:8-21:16, 32:19-34:21.)  It is undisputed that the union wanted such schedules to preserve employees' weekends off.  (Bevan Dep. 35:11-21; Tavaglione Dep. 59:17-60:6.)  It is undisputed that during the 2004 negotiations, the City agreed to 32/48 schedules proposed by the union with the understanding that the City would not have to pay overtime for the 8 hours worked in excess of 40 during the second week.  (Tavaglione Dep. 58:12-60:23.)  It also is undisputed that once those schedules were in place, the union did not tell employees they should sign waivers during the bid and did not object to calculation of overtime based on the 80 hour pay period.  (*Id*. at 62:13-15.)  The union also did not view payment of overtime under the 80-hour pay period as a problem and did not challenge it.  (*Id.* at 63:11-64:6.)

Plaintiffs attempt to create a disputed issue of fact by arguing that individual employees should have signed waivers agreeing to the schedule.  This does not create a material issue of fact.  The City does not dispute that employees did not sign waivers.  Rather, it asserts that such waivers were not required.  Nowhere does 207(j) require individual employees to sign waivers.  The City is obligated by the Meyers-Millias Brown Act to negotiate and enter agreements only with the employee's exclusive bargaining agent.  *See* Cal. Gov. Code §§ 3503, 3504, 3505.  Ms. Tavaglione testified that she had authority to negotiate with the City regarding schedules.  (Tavaglione Dep. 61:21-25.)  The union urged the City to accept its proposed schedules and, when the City raised its concern about the FLSA, Ms. Tavaglione suggested that employees could sign waivers, which she understood were designed to "protect the City."  However, Tavaglione said that waivers were not something the union required to reach agreement and that she ultimately considered them a "nonissue."  Therefore, she did not inform employees that they should sign waivers.  (*Id*. at 62:13-21.)

Moreover, the City is not asserting that the union generally waived employees' FLSA rights.  It is settled law that employees may not waive their rights under the FLSA.  *See Leever v. Carson City,* 360 F.3d 1014, 1018 n.3 (9th Cir. 2004) (citing *Barrentine v. Arkansas-Best Freight Sys., Inc.,* 450 U.S. 728, 740 (1981).)  What is at issue here is whether the union and City met the requirements of the

FLSA exemption set forth in 29 U.S.C. § 207(j). *See Leever*, 360 F.3d at 1018 n.3 (2004) (Agreement [under 29 U.S.C. § 207(k) "was not necessarily a waiver of [Plaintiff's] rights under the FLSA, but an attempt to conform to one of its exemptions.") Tavaglione conceded that employees were not foregoing their right to overtime, they were agreeing to a different calculation of overtime. (Tavaglione Dep. at 58:22-25.) Here the union and City exercised their rights under the FLSA to agree to alternative schedules that benefitted both the City and the employees.

Clearly there was a meeting of the minds between the union and City regarding the fact that adoption of the union's proposed schedules meant that the City would pay overtime in excess of 80 hours in a 14-day period. "An essential element of any contract is the consent of the parties, or mutual assent." *Donovan v. RRL Corp.*, 26 Cal.4th 261, 270 (2001) (citing Cal. Civ. Code §§ 1550 & 1565.) Mutual consent necessary to form an agreement "is determined under an objective standard applied to the outward manifestations or expressions of the parties*, i.e.* the reasonable meaning of their words and acts, and not their unexpressed intentions and understandings." *Deleon v. Verizon Wireless, LLC,* 207 Cal.App.4th 800, 813 (2012) (internal quotations and citations omitted.) Ms. Tavaglione testified that she understood that overtime would be paid consistent with 207(j) and that she did not view this as a problem. Larry Bevan also understood in formulating the schedules that the 80 hour pay period was "precedent" and that it would continue.[9]

## III.   PLAINTIFFS IMPLICITLY AGREED TO PAYMENT OF OVERTIME BASED ON THE 80-HOUR, 14-DAY PAY PERIOD

As Plaintiffs Lim and Duff-Brown testified, the City had paid Plaintiffs overtime based on an 80-hour, 14-day pay period throughout their employment that began in the late 1990s. Duff-Brown stated that she never questioned how she was being paid overtime until 2009 when she learned that employees in her classification assigned to a different location were paid overtime based on a 40 hour work week. (Duff-Brown Dep. 24:25-25:3, 25:13-28:20.) Plaintiffs did not challenge this practice until at the earliest the fall of 2009 when Mr. Lim complained to the Department of Labor. (Lim Dep. 51:22-52:6, 59:10-17.) In fact, Mr. Lim testified that from the beginning of his employment in 1997

---

[9] In its MSJ Order, the Court applied California contract principles in analyzing the issues. MSJ Order at pp. 7-8. However, the City is unclear whether California contract law is applicable in construing whether an employer has met the requirements of an FLSA exemption.

until around 2007, he earned a substantial amount of overtime, at times earning more in overtime than his regular salary.[10] (Lim Dep. 29:14-19.)

The employees' ongoing acceptance of this method of overtime payment constituted an implied understanding or agreement to the Department's payment of overtime based on an 80-hour, 14-day pay period. *See McCrary v. Weyerhaeuser Co.*, 457 F.2d 862, 864 (9th Cir. 1972) (construing the FLSA's 7(g) exemption and finding that "the employees' continued acceptance of that method of payment amounted to an implied understanding and agreement to the company's method."); *see also Amador v. Guardian Installed Servs., Inc.*, 575 F. Supp.2d 924, 929 (N.D. Illinois 2008) (construing 7(g) exemption to find that "although plaintiffs may have been dissatisfied with piecework compensation, they were informed prior to performing the work that they would be compensated in this fashion.")

In addition, Plaintiffs knew or should have known about the union's agreement with the City. Tavaglione testified that both she and Larry Bevan met with employees to inform them about the 2004 negotiations as well as the schedules and to answer members' questions. (Tavaglione Dep. at 34:5-35:3.) Plaintiffs testified that they were aware of the City and union's agreement before they filed this lawsuit. (Duff-Brown Dep. at 48:4-25, 60:24-66:2.) After the DOL informed Mr. Lim that there was an agreement between the City and union regarding the schedules, Mr. Bevan also informed Lim that there was such an agreement. (Lim Dep. at 70:25-71:23.)

## IV. THE AGREEMENT IS A LONGSTANDING PAST PRACTICE THAT NEED NOT BE REFLECTED IN THE COLLECTIVE BARGAINING AGREEMENT

Longstanding past practices can become a term and condition of employment without being reflected in a collective bargaining agreement. *See Frankl ex. rel. N.L.R.B. v. HTH Corp.*, 693 F.3d 1051 (9th Cir. 2012) ("Where an employer has a past practice of providing union representatives access to its facilities, that past practice becomes a term and condition of employment that cannot be changed without first notifying and bargaining with the union to agreement or good faith impasse."); *Brotherhood of Locomotive Engineers v. Burlington Northern R. Co.,* 620 F.Supp. 163, 171 (D.C. Mont. 1985) ("a court must carefully scrutinize the past practices of the parties, since they provide the

---

[10] After 2007 he still earned overtime, just not as much. (Lim Dep. 29:19-24.)

most reliable means of elucidating the terms of the understanding extant between the parties."); *see also Riverside Sheriff's Ass'n v. County of Riverside*, 106 Cal.App.4th 1285 (2003) ("to be binding a past practice: must be (1) unequivocal; (2) clearly enunciated and acted upon; and (3) readily ascertainable over a reasonable period of time as a fixed and established practice accepted by both parties.")

First, the practice is unequivocal as Plaintiffs admit that during their entire employment since the late 1990s, they have been paid overtime based on the 80-hour 14-day pay period.  Second, the practice was clear and consistent.  Plaintiffs allege that at no point have they been paid overtime based on a 40-hour week.  Third, the practice of calculating overtime based on an 80-hour, 14-day pay period is a longstanding past practice dating as far back as 1998, if not longer.  This practice was established between the City and the Plaintiffs' authorized representative, SEIU, first when the union voted to waive overtime based on a 40-hour work week in the late 1990s and second, when they proposed schedules preserving the 80-hour, 14-day period during the 2004 negotiations and the City accepted the union's proposed schedules.  Larry Bevan testified that union and management discussed this past practice during the 2004 negotiations and the unions made clear that employees wanted this practice to continue.  (Bevan Dep. at 44:1-47:15.)

The purpose of the FLSA is to "ensure that each [covered] employee would receive a fair day's pay for a fair day's work and would be protected from the evil of overwork as well as underpay." *Parth*, 630 F.3d at 801 (internal citations and quotations omitted.)  Under these circumstances, where the City agreed to schedules proposed by the union in order to preserve employees' weekends off all the while making clear that it would only pay overtime based on an 80-hour work week, and where the union understood and expressed no objection to this method of overtime payment, it would be manifestly unjust to hold the City liable under the FLSA for failure to pay overtime in excess of 40 hours in a week.  *See id.* (finding no FLSA violation where the 12-hour shift scheduling practice "was first initiated at the nurses' request" and "the pay practice protects employees from the evils of overwork and underpay...")

## V.    PLAINTIFFS ARE NOT ENTITLED TO LIQUIDATED DAMAGES

As the Court noted in its Order denying the parties' cross motions for summary judgment, the decision whether to award liquidated damages is a matter within the Court's discretion if "the employer shows to the satisfaction of the court that the act or omission giving rise to [the FLSA action] was in good faith and that [the employer] had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor standards Act of 1938.'" (quoting 29 U.S.C. § 260.)[11]

Based on the discovery conducted since  the Court's MSJ Order, the record has only become clearer that the City had every reason to believe that it had secured an agreement from the union that complied with the 207(j) exemption.  Ms. Tavaglione testified that she understood when the City and union agreed to schedules in 2004 that the City would pay overtime based on the 80-hour, 14-day period.  Larry Bevan testified that this agreement dated back to the late 1990s when the union members voted to adopt such schedules.  The Plaintiffs testified that throughout their employment they earned overtime based on the 80-hour pay period and did not complain about this practice for well over a decade.  In 2012, SEIU 1021 dropped a grievance challenging the practice.

City representative Bob Thomas consulted counsel during the negotiations and confirmed that the hospital exemption was applicable to employees at the BHC.  (Deposition of Martin Gran 10:8-12:12.)  Moreover, the Department of Labor investigated the City's practices with respect to payroll and time accounting for employees at the BHC and concluded that the City was "in compliance with the Fair Labor Standards Act" and met the requirements of 29 U.S.C. §207(j). (Bond Dec. Exh. D at pp.5-6; *see also* Richardson Dec. ¶¶ 4-6.)

In *McLaughlin v. Richland Shoe Co*., 486 U.S. 128 (1988), the Supreme Court held that an employer's conduct is willful if it "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  486 U.S. at 133.  However, where an employer relies on substantial legal authority, it may avoid a willfulness finding.  Consistent with its ruling reversing an award of liquidated damages, the Court in *Service Employees Intern. Union, Local 102 v. County of San Diego*, 60 F.3d 1346 (9th Cir. 1994) reversed a finding of willfulness where it was "unable to

---

[11] The Court already granted the City's motion to apply the two-year statute of limitations. MSJ Order at p. 11.

1   identify any knowing or reckless conduct on behalf of the County" where the County relied on

2   "substantial legal authority when it decided not to compensate for standing time as well as consulting

3   experts and the [Department of Labor] in an attempt to comply with the law." 60 F.3d at 1355; *see*

4   *also Chao v. A-One Medical Services, Inc*., 346 F.3d 908 (9th Cir. 2003) ("violation of the FLSA is

5   willful if the employer knew or showed reckless disregard for the matter of whether its conduct was

6   prohibited by the FLSA.")(internal quotations omitted).

**CONCLUSION**

For the foregoing reasons, the Court should grant the City's motion for summary judgment.

Dated: April 11, 2014

DENNIS J. HERRERA
City Attorney
ELIZABETH SALVESON
Chief Labor Attorney
RUTH M. BOND
Deputy City Attorney

By:*/s/Ruth M. Bond*_____
RUTH M. BOND
Attorneys for Defendant
CITY AND COUNTY OF SAN FRANCISCO