UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREDA J. DUFF-BROWN, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, CALIFORNIA,<br><br>    Defendant. | Case No. 11-cv-03917-TEH<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

This matter came before the Court on May 19, 2014, on Defendant's motion for summary judgment. Having considered the arguments of the parties and the papers submitted, the Court now GRANTS Defendant's motion for the reasons set forth below.

**BACKGROUND**

Plaintiffs, present and former employees of the Defendant City and County of San Francisco's (the "City") Behavioral Health Center ("BHC"), bring this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, seeking unpaid overtime pay. During the relevant time period, Plaintiffs regularly worked the following schedule: 32 hours in the first week, 48 hours in the next week, for a total of 80 hours in every two-week period. Compl. ¶¶6-7. Under the FLSA, employees must be paid overtime at a rate of one and one-half times their base rate for any time worked in excess of 40 hours in each seven-day period. 29 U.S.C. § 207(a)(1). Plaintiffs, however, were only paid overtime for hours worked in excess of 80 hours in each fourteen-day period. Compl. ¶ 14.

The City maintains that Plaintiffs were not unfairly denied overtime, but rather were paid pursuant to section 207(j) of the FLSA, which forms an exemption to the general overtime rule, and provides that hospital facilities may, "pursuant to an agreement or understanding arrived at between the employer and the employee before performance of the work," adopt "a work period of fourteen consecutive days . . . in lieu of the workweek

of seven consecutive days for purposes of overtime computation." 29 U.S.C. § 207(j). Plaintiffs argue that there was no such agreement between them and the City to adopt a fourteen-day work period.[1] Thus, the crux of the dispute here is whether the City and the Plaintiff employees actually reached an "agreement or understanding" to adopt a fourteen-day work period for overtime computation purposes.[2] Both parties previously moved for summary judgment on this question in 2012. The Court denied summary judgment on January 15, 2013, finding that factual disputes precluded the Court from determining whether or not there was an agreement. *See Duff-Brown v. City & Cnty. of San Francisco*, No. C11-3917, 2013 WL 163530, at *6 (N.D. Cal. Jan. 15, 2013).

Whether or not the parties reached an agreement here centers on a series of "meet and confer" sessions conducted in May and June of 2004 between the City and the Unions representing the Plaintiffs.[3] During this time, the City was in the process of reorganizing its Mental Health Rehabilitation Facility ("MHRF") into the BHC, and part of the process involved renegotiating the terms of employment for employees who would continue on with the reorganized BHC. The parties' previous summary judgment motions were based on notes documenting these meet and confer sessions and declarations from persons involved in the sessions. Although the Court's January 15, 2013 Order Denying Cross-Motions for Summary Judgment sets forth a comprehensive recitation of the relevant facts at issue in those motions, the Court nevertheless summarizes them briefly here, as they also form part of the record presently before the Court on the instant motion for summary judgment.

---

[1] Plaintiffs do not dispute that BHC is a valid hospital facility for purposes of the exemption.

[2] Plaintiffs do not allege that they were improperly denied overtime pay for hours worked in excess of 80 hours in each fourteen-day period.

[3] The employees were represented by several different Unions at that time, which opted to meet and confer as a group. There is no dispute in this case about whether the representatives at the negotiations were authorized to speak for all of the employees. *Duff-Brown,* 2013 WL 163530, at *1 n.1.

The meet and confer notes reflect that on June 2, 2004, the City first proposed work schedules providing for 40-hour work weeks. See Notes at CCSF000486 (Bond Decl., Ex. A)(Docket No. 80) (hereinafter Notes) [4]; Thomas Decl. ¶ 7 (Bond Decl., Ex. A) (hereinafter "Thomas Decl."). Under the City's schedules, employees would no longer have alternating weekends off, which raised concerns for Union Representative Kim Tavaglione. Notes at CCSF 000486. City Negotiator Bob Thomas explained that the 40-hour schedules were necessary in order to comply with the FLSA. *Id.*

At the next meeting, on June 7, 2004, the notes show that Tavaglione said she had "checked with [Union] attorney, Ann Yen, who said that employees . . . can waive their overtime and they can have every other weekend off" and that employees should "sign waiver[s] during the bidding process." Notes at CCSF 000488. To preserve employees' alternating weekends off, on June 9, 2004, the Unions, via Shop Steward Larry Bevan, counter-proposed schedules based on an 80-hour, fourteen-day work period. Notes at CCSF 000493; Thomas Decl. ¶ 7. Bevan said he believed the schedules would meet BHC's coverage needs, "but not necessarily the FLSA needs." Notes at CCSF 000493. Addressing the Unions' proposed schedules, City Negotiator Thomas stated: "FLSA has a separate license and if we go to the 80-hour week, we won't have the FLSA problem that we would have with a 40-hour week . . . . With [Bevan's] schedule, we don't have to worry about FLSA any longer." *Id.*

On June 14, 2004, the Unions and the City agreed to the following work schedule: 32 hours in the first week, and 48 hours in the second week, for a total of 80 hours every two weeks. *See* Thomas Decl. ¶ 9; 6/15/04 E-mail from Bob Thomas to other City officials (Thomas Decl., Ex. B). The employees never signed any written waivers.

Based on the declarations and notes regarding the 2004 meet and confer sessions, the Court denied the parties' cross-motions for summary judgment, finding disputed issues

---

[4] Unless otherwise noted, citations to the record refer to the record before the Court on the instant motion for summary judgment, not the record for the 2012 cross-motions.

of fact over whether the City and the Unions representing Plaintiffs had both agreed to adopt a fourteen-day work period. The Court found "that from the totality of the circumstances . . . a jury could reasonably infer that the Union agreed to adopt the 14-day period for purposes of overtime computation." *Duff-Brown*, 2013 WL 163530, at *6. However, the Court also found that a jury could reasonably infer from Union Representative Tavaglione's statements that she believed that in order for the employees to actually adopt a different overtime base "they should [have] sign[ed] waivers during the bidding process." *Id.* at *7. Additionally, the Court found that Union Shop Steward Bevan's statement that he was unsure whether his proposed schedules met FLSA standards suggested that he may not have been aware that his proposed schedules would have the effect of adopting the section 207(j) exemption. *Id.* Based on these findings, the Court held that there was a "genuine dispute as to whether there was mutual assent by both sides to adopt a 14-day base period over a 7-day base period." *Id.*

Since the Court's ruling, the parties engaged in further discovery. Based on the results of that discovery, the City again seeks summary judgment, arguing that during the 2004 meet and confer sessions, the City and the Unions representing Plaintiffs agreed to use a fourteen-day work period for overtime purposes. In the alternative, the City argues that it had an implicit agreement with Plaintiffs to use a fourteen-day work period as such a period has been in use since the late 1990s, or at least since 2004, and was accepted by Plaintiffs consistently until 2009.

**LEGAL STANDARD**

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* At the summary judgment stage, the court may not weigh the evidence and must view it in

4

1   the light most favorable to the nonmoving party. *Id*. at 255.

2   It is not the duty of the district court "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). "[A] mere scintilla of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some significant probative evidence tending to support the complaint." *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997) (citation and internal quotation marks omitted).

## DISCUSSION

Since the Court's January 15, 2013 ruling, the parties have engaged in further discovery focused on the 2004 meet and confer sessions. Contrary to Plaintiffs' argument at the hearing that nothing has changed since the previous round of summary judgment motions, the Court finds the record before it more robust. Specifically, the Court now has the benefit of deposition testimony, including testimony from Union Representative Tavaglione and Union Shop Steward Bevan. The City argues that with the benefit of their deposition testimony, there is no longer a genuine dispute that it was clear to all parties in 2004 that a fourteen-day work period was going to apply for overtime computation purposes. Based on the complete record before it – the meet and confer notes which were previously submitted, as well as the new deposition testimony – the Court agrees.

Section 207(j) requires the employer and employees to reach an "agreement or understanding" to use a fourteen-day work period. 29 U.S.C. § 207(j). Black's Law Dictionary defines an "agreement" as a "mutual understanding between two or more persons about their relative rights and duties," and an "understanding," as an "agreement, esp[ecially] of an implied or tacit nature." Black's Law Dictionary (9th ed. 2009). In its previous order, the Court raised doubts that there was a "mutual understanding" between the City and the Unions because Union Representative Tavaglione may have understood her consent to a fourteen-day work period to be conditional on the City's obtaining waivers from individual employees. *Duff-Brown*, 2013 WL 163530 at *7. During Tavaglione's

deposition, however, she was asked whether it was "understood at the [negotiation] table" that the "80-hour rule for every two weeks" was to apply, and she agreed that it was. Tavaglione Dep. 59:12-60:23 (Bond Decl., Ex. B). She was immediately asked again: "It was understood that employees would get paid overtime after – based on the 80-hour pay period?" to which she said, "Yes." *Id.* Tavaglione further clarified that she understood the Unions to have had full authority to agree to schedules on behalf of employees; she did not mention any need to obtain employees' individual waivers. Tavaglione Dep. 61:21-24. When asked about waivers specifically, Tavaglione explained the waivers were something she suggested the City could do to protect itself; it was not something the Union was involved in or that she believed was required. Tavaglione Dep. 60:24-61:7; 62:17-63:6. Based on her testimony, there is no dispute of material fact that Tavaglione understood the terms of the agreement to include a fourteen-day work period for overtime purposes, and that waivers were of no concern to the Unions – as a condition of their consent to the schedules or otherwise.

The other disputed issue of material fact previously identified by the Court was whether Union Shop Steward Bevan intended for his proposed schedules to actually express Union assent to a fourteen-day work period. To that point, Bevan, who had been employed at BHC's predecessor organization, testified that from the late 1990s, he had been paid overtime based on an 80-hour/fourteen-day work period pursuant to a vote by Union membership. Bevan Dep. 21:7-20. In fact, he testified that he told Tavaglione during the 2004 negotiations about the prior vote and that "[they] both agreed that it was a prior practice, that the precedent had been set." Bevan Dep. 23:3-13. He then testified that both the City and the Union agreed that there had been a prior practice and that "Kim [Tavaglione] clearly stated that we [the Union] wanted to practice under the prior practice, the members had made it clear." Bevan Dep. 46: 15-18. From Bevan's testimony, the Court finds that he understood that a fourteen-day work period was going to be in effect, and in fact he believed such a practice was in line with a prior membership vote.

Although the City's position during the 2004 negotiations is not in dispute, because

6

an agreement must involve a "mutual understanding" the Court notes briefly that the testimony of City representatives involved in the negotiations reflects that it was their understanding that the City would pay overtime based on an 80-hour/fourteen-day work period. Thomas Decl. ¶¶ 8-9; Houston Dep. 54: 13-17 (Bond Decl., Ex. A) ("[The City] would not have agreed to something that the union didn't also agree to, and we didn't want to violate the FLSA, and it was clear to us that the union agreed with us on the 80-hour workweek.") As both Tavaglione and Bevan testified that they intended to proceed on a fourteen-day work period, and the City officials also testified to the same, the Court finds that the Unions and the City reached an agreement to adopt a fourteen-day work period for overtime purposes.

To rebut the City's argument, Plaintiffs maintain that a genuine issue of material fact still exists because employees did not sign waivers. Specifically, Plaintiffs argue that there was "no agreement to waive Plaintiffs' FLSA rights" as Tavaglione said neither she nor Bevan had the authority to waive Plaintiffs' FLSA rights, and the employees themselves did not sign any waivers. Plaintiffs' Opp. at 12. Plaintiffs' argument, however, has no foundation in statute or caselaw. Section 207(j) merely requires parties to come to an "agreement or understanding" regarding the adoption of fourteen-day work period for overtime purposes. 29 U.S.C. § 207(j). It does not mention any requirement regarding the waiver of FLSA rights; in fact, FLSA rights cannot be waived, *see Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981). Thus whether employees signed individual FLSA waivers is immaterial to the question of whether an agreement was reached to adopt a fourteen-day work period for overtime. *See Leever v. Carson City*, 360 F.3d 1014, 1018 n.3 (9th Cir. 2004) (noting that "even if the Union was authorized to represent [an individual], it could not waive rights guaranteed to [him or] her under the FLSA" and further explaining that "an attempt to conform to one of [the FLSA's] exemptions" is "not necessarily a waiver of . . . rights under the FLSA") (citation omitted); *see also* Cal. Gov. Code § § 3503-05 (obligating the City to negotiate and enter into employment agreements with the employees' union). While the Court previously

found that Union assent may have been conditioned on the obtaining of individual waivers, Tavaglione's testimony clarifies that waivers were not a condition and confirms that – vested with authority to enter into agreements on employees' behalf – she agreed to the fourteen-day work period. As both the City and the Union representatives' testimony reflects that they agreed to apply a fourteen-day work period for overtime purposes, that employees did not sign waivers is of no consequence and does not raise a genuine issue of material fact.

Plaintiffs also argue that the absence of a written contract precludes the City from establishing that an agreement existed. Plaintiffs raised a similar argument during the previous round of summary judgment. The Court addressed the argument in its January 15, 2013 Order Denying Cross-Motions for Summary Judgment, and concluded that although the absence of a written document violates FLSA's record-keeping regulations, 29 C.F.R. § 516.23(b), it is not dispositive as to whether an agreement exists here. *See Duff-Brown*, 2013 WL 163530, at *6. That is, there may still be a valid section 207(j) agreement without a written contract, because section 207(j)'s language requires merely an "agreement or understanding" and does not explicitly require a written contract. *See id.* Finding its prior reasoning sound, the Court holds that the absence of a written contract here does not raise a genuine issue of material fact, where the testimony establishes that both the Unions and the City agreed.

Construing the evidence in the light most favorable to Plaintiffs, the Court holds that the Unions and the City agreed in 2004 to adopt a fourteen-day work period for overtime purposes. The testimony from the parties involved establishes that it was their understanding that a fourteen-day work period would apply. That the agreement was not memorialized in a written document, or that employees were not individually asked to waive any FLSA rights does not raise a genuine issue of material fact as to whether an agreement was in fact reached. As both the City and the Union representatives both understood their conduct to express assent to a fourteen-day work period, they agreed. Accordingly, Plaintiffs were paid overtime pursuant to a valid section 207(j) exemption

and Defendant is entitled to summary judgment with respect to Plaintiffs' claims.

Finally, the Court notes that although the evidence regarding the 2004 negotiations is sufficient to establish the application of section 207(j) exemption here, that the employees were paid overtime pursuant to a fourteen-day work period since the late 1990s, or at least since 2004, and did not sue for at least five years, does suggest an implicit agreement. However, because there is no controlling legal authority as to whether a past practice may constitute an agreement for purposes of the section 207(j) exemption, the Court does not rely on the parties' longstanding practice, and instead rests on the 2004 negotiations to conclude that a valid section 207(j) agreement exists. *Cf. McCrary v. Weyerhaesuer Co.*, 457 F.2d 862, 864-65 (9th Cir. 1972) ("the appellant's long continued and consistent method of computing overtime pay, and appellees' continued acceptance of the same with complete awareness of appellant's method of computing the same, brings this case within the exception provided for in Sec. 7(g)").

## CONCLUSION

For the reasons discussed above, Defendant's motion for summary judgment is GRANTED. The clerk is directed to enter judgment and close the case.

**IT IS SO ORDERED.**

Dated: 6/4/14

_____
THELTON E. HENDERSON
United States District Judge

9